UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRIAN C.,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CASE NO. 3:22-CV-5088-DWC<br><br>ORDER AFFIRMING DEFENDANT'S DECISION DENYING BENEFITS |

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of Plaintiff's applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before United States Magistrate Judge Christel.

## BACKGROUND

Plaintiff filed for Title II disability and disability insurance benefits in September 2019, alleging an onset date of January 1, 2019, which he amended to April 1, 2019. AR 15, 187-88. His claim was denied initially and upon reconsideration. AR 72-101. On July 23, 2021, Plaintiff testified at a hearing before an Administrative Law Judge (ALJ). AR 38-71. On August 18, 2021

the ALJ issued an unfavorable decision. AR 12-37. The Appeals Council denied Plaintiff's request for review on December 17, 2021, making it the final decision of the Commissioner. AR 1-6; 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

## DISCUSSION

Plaintiff argues the ALJ improperly "ignored" the opinion of a psychological consultative examiner that Plaintiff "currently appears unable to obtain and maintain full time employment" due to his mental impairments, failed to assess whether Plaintiff qualified for disability under one of the "listings" that automatically qualify a person for benefits, and failed to incorporate certain limitations into his RFC. *See generally* Dkt. 7. The Commissioner filed a demurrer. Dkt. 8.

I.       Medical Evidence Regulations

The regulations regarding evaluation of medical evidence were amended for claims protectively filed on or after March 27, 2017, such as this one. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). In the new regulations, the Commissioner rescinded Social Security Regulation (SSR) 06-03p and broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. The Commissioner also clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

Additionally, the new regulations state the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2); 416.920c(a), (b)(2).

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion[1], the ALJ must still "articulate

---

[1] The Ninth Circuit recently held that "[t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F. 4th 785, 787 (9th Cir. 2022), *petition for rehearing pending*. As a result, the Ninth Circuit concluded that the revised regulations displaced the longstanding case law

how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1); 416.920c(a), (b)(1). The ALJ is specifically required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). Inversely, consistency involves a consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2).

II. The ALJ's Evaluation of Relevant Medical Evidence

Here, the ALJ found the assessments performed by State agency psychological consultants were the most persuasive mental health related evidence in the record because they were consistent with and supported by the medical evidence in the record as a whole. AR 28. Before turning to the specific assessments, the Court notes that the ALJ determined Plaintiff's statements[2] concerning the intensity, persistence and limiting effects of his alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record—a finding Plaintiff fails to substantively challenge.[3] AR 22.

---

requiring an ALJ to provide "specific and legitimate" reasons for rejecting a contracted physician's opinion or "clear and convincing" reasons for discrediting an uncontradicted physician's opinion. *Id.*

[2] The ALJ summarized Plaintiff's testimony as follows: "At the hearing, the claimant testified that with his post-traumatic stress disorder, he had difficulty being around people, as well as difficulties with sleep. He indicated that at prior jobs, he had issues with customers and coworkers, oral and physical arguments. He stated that he was on medications for his mental health conditions. He testified that he did not think the VA was helping with his neuropathy, and that his neuropathy was in his hands and feet. He stated that his neuropathy was worse with walking. He also stated he had issues with walking due to his COPD. He stated that he used his inhalers several times a day. He testified to his post-traumatic stress disorder (PTSD) triggers. He indicated that he used the cane all the time in the past three years, noting it was prescribed by the VA. He described limitations with his right arm, as well as pain he experiences in his low back. He stated that due to his post-traumatic stress disorder and anxiety, he spent most of the time at home." AR 22.

[3] *See infra* p.11.

During a February 2019 vocational rehabilitation consultation Plaintiff reported difficulty working with people and indicated he was looking for a job that did not require interacting with people because of his "anger at having to work with civilians with lax work ethics." AR 26. Talk therapy was recommended. *Id*.

At a June 2019 mental health consultation Plaintiff reported that he was a 90% service-connected veteran with a 50% allocation for PTSD he believed to be caused by combat-related events during his service in the Army from 2004 through 2013. *Id*. Plaintiff's appeared agitated but generally mentally "intact" with appropriate grooming. *Id*. An initial treatment plan was completed, and Plaintiff was scheduled to begin attending a PTSD 101 group. *Id*.

At a November 2019 appointment Plaintiff said his anxiety was his "biggest issue" at that time. The provider diagnosed Plaintiff with PTSD and major depressive disorder, and adjusted his psychotropic medications. *Id*.

In February 2020 Plaintiff reported continuing anxiety, noting that he would get butterflies in his stomach and cold sweats by going to the store. *Id*. Plaintiff said he had "difficulty" starting the prescribed PTSD support group. However his mental state exam was "generally intact" and the provider refilled his medications with some dosage adjustment. *Id*.

In August 2020 Plaintiff reported his anxiety was "through the roof", and that he was not able to go to any stores. *Id*. However, his mental status exam was generally intact, including a euthymic mood, and he was continued on his medications with no adjustments. *Id*.

At an October 2020 follow-up appointment Plaintiff continued to report high anxiety and difficulty sleeping. AR 27. His mental status exam was mostly intact and his medications were refilled with one dosage adjustment. *Id*.

In December 2020 Plaintiff denied any acute problems, stated that his mood was "okay" but that he was in a lot of physical pain. *Id*. His mental status exam was intact and his medications were refilled with one dosage adjustment. *Id*.

At a March 2021 appointment Plaintiff explained that he had missed several appointments due to the loss of his father, and that he was having "variable sleep." *Id*. However, his mental status exam was intact and his medications were continued. *Id*. Later that month Plaintiff told his primary care physician that he had missed appointments and had been unable to sleep well since the death of his father, but that he did not want to do therapy. *Id*.

In April 2021 Plaintiff attended a psychological consultative examination with Lezlie A. Pickett, Ph.D. (Picket). *Id*. He told Picket, "I cannot keep a job since I've been out of the military. I just can't do much. I'm 90% disabled…my back's all messed up, my right shoulder's all messed up, I've got a bad left knee and PTSD is, like, one of the biggest problems." *Id*.; AR 767. Plaintiff explained to Picket, "I just have a helluva time dealing with people. Even when I was in the military, there toward's the end, I was having a whole lot of trouble dealing with people. I was a pretty bad alcoholic and I would show up to work reeking like a brewery every day." *Id*. He stated, "I don't drink like I used to, but it's still there." *Id*. Plaintiff told Picket that he underwent regular treatment by a "post-traumatic stress disorder doctor" but still had trouble sleeping and dealing with people. *Id*. He told Picket he currently "abuses" alcohol (distinguishing his past use as "addiction" to alcohol) and that he smokes tobacco and marijuana despite his COPD and asthma. AR 26-27, 768. He indicated that he was taking "quite a bit of meds" but did not think they were appropriately addressing his mental health symptoms because "anytime I have to go anywhere there's a crowd of people, my anxiety goes through the roof and I feel like a caged animal …". *Id*.; AR 770.

Pickett noted that Plaintiff was not, in fact, in counseling for PTSD and that his mental status examination revealed an intact working memory as well as intact recent and remote memory, an intact fund of information and ability to abstract, no difficulty with normal conversation, and no difficulty following a simple three-step command. *Id*.; AR 768. Picket stated that Plaintiff's insight was good, and his intellectual functioning was approximately average. *Id*.

Picket's "diagnostic impression" of Plaintiff was that he had chronic, moderate to severe PTSD, an Adjustment Disorder with Depressed/ Anxious Mood, and an Alcohol Use Disorder. AR 770. She recommended that Plaintiff engage and participate in "individual cognitive behaviorally based psychotherapy, to include skill building, symptom management and distress tolerance and obtaining and following through with psychopharmacological recommendations and intervention for symptoms management" as well as "substance treatment program". *Id*.; AR 772.

 Nevertheless, Picket opined that Plaintiff's prognosis was "guarded" and that he was "likely unable to sustain and persist for a normal work week" in full-time employment and/or the increased mental demands associated with competitive work based upon the severity of his PTSD, depression, and anxiety, which Picket said would seriously impair Plaintiff's ability to function appropriately with the public, handle stress appropriately, and respond to normative situational stressors in an appropriate manner. *Id*.; AR 771.

The ALJ concluded that Pickett's opinion that Plaintiff could not sustain employment was not consistent with the longitudinal record. AR 29, 391-92, 488, 544, 554-55, 1525, 1530-31. The ALJ pointed to specific instances where providers and examiners described Plaintiff as pleasant and cooperative. AR 20, 29, 391, 410, 432, 440, 441, 488, 544, 554, 558, 560, 769,

1165, 1173, 1185, 1203, 1205, 1525, 1530. The ALJ also stated that Picket's assessment was not supported by her own examination which revealed a generally intact mental status. Tr. 29, 769-70. Finally, the ALJ noted that Picket's comment on Plaintiff's employability is an issue reserved to the Commissioner. AR 29; 20 C.F.R. § 404.1520b(c)(3)(i)(a statement that a claimant is not able to perform regular or continuing work is reserved to the Commissioner and is neither valuable nor persuasive); 20 C.F.R. § 404.1520b(c)(the agency will not provide any analysis about how it considered such evidence).

### III. The ALJ's Relevant Determinations

The ALJ determined that Plaintiff has the following severe impairments: peripheral neuropathy; asthma; chronic obstructive pulmonary disease (COPD); major depressive disorder; PTSD; degenerative disc disease; and degenerative joint disease, right shoulder. AR 17.

The ALJ evaluated, *inter alia*, whether Plaintiff's "mental impairment" met or medically equaled the criteria for listings 12.04 and/or 12.15 "singly or in combination". AR 19; 20 CFR §§ 404.1520(d), 404.1525 and 404.1526. He found that Plaintiff did not satisfy the "paragraph B" criteria[4] because his mental impairments did not result in one extreme limitation or two

---

[4] The ALJ wrote, "**In understanding, remembering or applying information, the claimant has a mild limitation. The claimant alleged that he has difficulty taking medications without reminders, as well as needing reminders to take care of personal needs and grooming** (Exhibit 6E, p. 3). **However, the claimant also stated that he could pay bills, shop, and drive** (Exhibit 6E, p. 4). **Mental status examinations in the record have noted that his memory was intact** (See, e.g., Exhibits 2F, pp. 28, 40; 8F, pp. 8, 9; 10F, pp. 14, 19, 59). **His insight has generally been noted to be fair or good** (See, e.g., Exhibits 2F, p. 10; 4F, p. 18; 5F, pp. 12, 22; 8F, p. 9; 12F, pp. 113, 119). **In interacting with others, the claimant has a moderate limitation. Here, the claimant alleged that he has difficulty engaging in social activities, getting along with others, and spending time in crowds** (Exhibit 6E, pp. 5-6). **He reported similarly to the psychological consultative examiner, regarding difficulty in social situations** (See generally Exhibit 8F). **He also testified to difficulties at past jobs getting along with others (Hearing testimony). However, according to his statements, the claimant is also able to shop for a few minutes at a time and live with others** (Exhibit 6E, pp.1, 4). **Finally, the evidence shows that the claimant was described as pleasant and cooperative** (See, e.g., Exhibits 2F, pp. 9, 28, 40, 50, 58, 59; 4F, p. 18; 5F, pp. 11, 21, 25, 27; 8F, p. 8; 10F, pp. 14, 22, 34, 52, 54, 59; 12F, pp. 113, 118).

**With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. At the hearing, the claimant testified to some difficulties with concentration, noting that he could focus for only 15 to

marked limitations in a broad area of functioning.[5] In addition, the ALJ determined that Plaintiff did not satisfy the "paragraph C" criteria because the record does not reflect that Plaintiff suffered from a "serious and persistent" mental disorder.[6]

The ALJ assessed Plaintiff with the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), further limited by the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; the ability to stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours; the need to use a cane; only occasional bilateral pushing/pulling; only occasional climbing of ramps, stairs, ladders, ropes and scaffolds; only occasional stooping, kneeling, crouching, and crawling; no more than frequent reaching, handling, and fingering with the right upper extremity; only occasional exposure to extreme cold, excessive vibration, hazardous machinery, unprotected heights, and irritants such as fumes,

---

**20 minutes, and that he was always flipping through channels. He attributed these things to his anxiety. However, in his function report, the claimant did not note any specific issues in this area** (See generally Exhibit 6E). **Moreover, the claimant said that he is able to drive, watch TV, read, and manage funds** (Exhibit 6E, pp. 4, 6). **Additionally, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention.**

\* \* \*

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant asserted that he has difficulties handling stress and change, completing some personal care without assistance from his wife, and managing his mood (Exhibit 6E, pp. 2, 7; Hearing testimony). That said, the claimant also stated that he is able to care for pets and care for children (Exhibit 6E, p. 2). Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene and generally a normal mood and affect (See, e.g., Exhibits 2F, pp. 9, 10, 20, 28, 40; 4F, pp. 17, 18; 5F, pp. 11, 21, 22; 8F, p. 8; 10F, pp. 38, 52, 59; 12F, pp.113, 118)." AR 19-20.

[5] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. AR 19-20.

[6] The "paragraph C" criteria requires that a mental disorder is "serious and persistent" in that there is medically documented history of the existence of the disorder over a period of at least 2 years. It also requires that there is evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment, meaning that the claimant has minimal capacity to adapt to changes in the environment or to demands that are not already part of his or her daily life. AR 21.

odors, dust, gases, and poorly ventilated areas; the ability to understand, remember, and carry out simple, routine instructions with only occasional changes in the work setting, and the need for only brief and superficial interactions with the public and coworkers. AR 21.

Based on the testimony of the vocational expert the ALJ concluded that a person with Plaintiff's age, education, work experience, and RFC remained capable of performing other work existing in significant numbers in the national economy such as Document Preparer, Final Assembler, and Surveillance System Monitor, and therefore that Plaintiff was not disabled. AR 31.

### IV. The Court's Analysis

Plaintiff argues the ALJ improperly "ignored" Picket's opinion that Plaintiff "currently appears unable to obtain and maintain full time employment and/or the increased mental demands associated with competitive work based on the severity of PTSD, depression and anxiety." Dkt. 7 at 5; AR 771.

The Court concurs with the Commissioner that Plaintiff is mistaken. The ALJ did not ignore Picket's opinion, he rejected it. Therefore, Plaintiff's contention that Picket's opinion "effectively" means Plaintiff suffers from marked limitations in two out of four paragraph B criteria/areas of functioning which would qualify him as disabled under a listing is unavailing— the ALJ did not find Picket's assessment to be supported or consistent and therefore did not incorporate her opined limitations in her evaluation of the listings, at step two of the sequential evaluation. Dkt. 7 at 6; Dkt. 8 at 4-5.

Nor did the ALJ find Picket's opinion to be ambiguous or incomplete, thereby requiring him to further develop the record to allow for proper evaluation as Plaintiff suggests. Dkt. 7 at 6-7; s*ee Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Again, the ALJ found Picket's

opinion was inconsistent with the longitudinal record and unsupported by her own clinical findings.

Finally, Plaintiff's superficial critique of the ALJ's credibility analysis cannot overcome the substantial evidence cited by the ALJ for rejecting Plaintiff's subjective reporting. Dkt. 7 at 7-8. The ALJ found the record as a whole belied Plaintiff's subjective belief that he cannot interact with anyone, as he admittedly was able to shop, live with roommates, and comport himself pleasantly and cooperatively at medical appointments. AR 20, 51, 282, 391, 410, 432, 440-41, 483, 488, 544, 554, 558, 560, 769, 1165, 1173, 1185, 1203, 1205, 1525, 1530. A disability claimant does not establish that an RFC is erroneous by pointing to evidence the ALJ properly discounted. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Thus, the Court finds Plaintiff has not identified any errors in the RFC.

## CONCLUSION

For the foregoing reasons the Court hereby affirms the Commissioner's decision denying benefits.

Dated this 28th day of July, 2022.

David W. Christel
United States Magistrate Judge